UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Tina Robinson,
      Claimant

     v.                                Case No. 16-cv-347-SM
                                       Opinion No. 2017 DNH 160

Nancy A. Berryhill, Acting Commissioner,
Social Security Administration,
      Defendant


**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Tina Robinson, moves to reverse or vacate the Acting Commissioner's decision denying her applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income Benefits under Title XVI. See 42 U.S.C. §§ 423, 1381-1383c (collectively, the "Act"). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is granted, and the Acting Commissioner's motion is denied.

**Procedural Background**

I.  Procedural History.

In June of 2013, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she was disabled and had been unable to work since June 15, 2013 (she subsequently amended her onset of disability to October 31, 2013).  Claimant was 50 years old at the time and she had acquired sufficient quarters of coverage to remain insured through December 31, 2016.  Those applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In May of 2015, claimant, her representative, and a vocational expert appeared before an ALJ, who considered claimant's applications de novo.  Six weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.  Claimant then requested review by the Appeals Council.  That request was denied.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court,

asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8). In response, the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 12). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 13), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility

determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish

the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5,

6 (1st Cir. 1982). Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

**Background - The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her amended alleged onset of disability: October 31, 2013. Admin. Rec. at 20. Next, he concluded that claimant suffers

from the following severe impairments: "fibromyalgia, degenerative disc disease, obesity and status post left heel spur/Achilles tendon surgery." Id. But, the ALJ determined that those impairments, whether considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 23.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of "sedentary" work, subject to the following limitations: "she can occasionally climb stairs; she must avoid all ladders, ropes and scaffolds; she can occasionally balance, stoop, kneel, crouch and crawl; she must avoid hazards; [and] she must avoid concentrated exposure to cold temperatures and wetness." Id. at 24. In light of those restrictions, and based upon the testimony of the vocational expert, the ALJ concluded that claimant was capable of performing past relevant work as a switchboard operator, customer service clerk, and/or administrative assistant. Id. at 27. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

**Discussion**

Claimant challenges the ALJ's decision on two grounds, asserting that he erred: (1) by failing to give appropriate weight to the opinions of claimant's treating physician, Dr. Amber Schmidt; and (2) by failing to recognize that claimant meets the requirements of listing 1.04(A), as set forth in Part 404, Subpart P, Appendix 1, of the Regulations. The latter argument is both insufficiently developed and insufficiently supported by the record evidence to warrant substantial discussion. It is enough to note that the Commissioner's memorandum fully discusses the reasons that the ALJ's decision on that issue is supported by substantial evidence.

Claimant's primary argument, however, has more merit. She claims the ALJ failed to give appropriate weight to the opinions of her treating physician, Dr. Amber Schmidt, a board certified practitioner of family medicine. Instead, she says, the ALJ afforded too much weight to the opinions of the non-examining state agency physician, Dr. Hugh Fairly.

Although Dr. Fairly acknowledged claimant's Fibromyalgia, he seems to have dismissed it with a single sentence: "[July, 2012] - Clinical signs of Fibromyalgia: Cymbalta 'helps a lot.'"

Admin. Rec. at 86. Dr. Fairly appears to be referencing a statement claimant made in December of 2012, approximately one month after she was prescribed Cymbalta (presumably to address pain associated with Fibromyalgia, but also, perhaps, to address symptoms of depression). See Id. at 307. But, that single statement neither fully nor accurately represents claimant's condition. Indeed, it seems inconsistent with the medical record as a whole. To the extent it implies that claimant's Fibromyalgia was well controlled with medication, it is incorrect.

Just two months after starting treatment with Cymbalta, claimant reported that she didn't think it was working anymore. Id. at 303. Shortly thereafter, she was switched to a different medication – Viibryd – with the note that "she was taking Cymbalta but it was too expensive." Id. at 264. And, shortly after that, she was instructed to stop taking Viibryd and Dr. Schmidt prescribed a narcotic (Percocet) to address claimant's ongoing pain. Id. at 266.[1] In short, then, claimant's statement

---

[1] Both Cymbalta and Viibryd are non-narcotic members of a class of medications known as "selective serotonin reuptake inhibitors" or SSRIs. They are typically used to treat depression, but may also be effective in the treatment of Fibromyalgia. Percocet is a combination of acetaminophen and oxycodone (an opioid) that is used to treat moderate to severe pain.

9

(almost immediately after she began using Cymbalta) that Cymbalta "helps a lot" is hardly the full story (and may actually be somewhat misleading). Nevertheless, the ALJ gave Dr. Fairly's opinion "great weight." Id. at 27. At the same time, the ALJ gave the opinions of claimant's treating physician, Dr. Schmidt, "little weight." Id. at 26.

Claimant asserts that was error and in support of the claim that she is disabled, she points primarily to Dr. Schmidt's various opinions as expressed in her "Fibromyalgia Medical Source Statement." See Admin. Rec. at 423-28. In that comprehensive assessment of claimant's symptoms and associated conditions, Dr. Schmidt stated:

1. She had been treating claimant for two years, and met with her, on average, every two or three months;

2. Claimant meets the 1990 American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia;

3. Claimant suffers from numerous symptoms associated with Fibromyalgia, including a history of widespread chronic pain, cognitive dysfunction, dizziness, insomnia, severe fatigue, and significantly reduced physical activity or mental function;

4. Claimant suffers from "constant, stabbing, aching pain, 6-8/10";

5. Claimant experiences 16 of 18 tender points (with 11 of 18 typically being used to characterize Fibromyalgia);

6.  Some of the pain-killing medications claimant takes include side effects that cause drowsiness/dizziness and, therefore, have implications for claimant's ability to work; and, finally,

7.  If claimant were placed in a competitive work situation, claimant's functional limitations would likely cause her to "miss several days a week due to pain issues and [she] would need numerous breaks during the day."

Those opinions are entirely consistent with the medical record. Indeed, as the Commissioner acknowledges, "Treatment notes from throughout the period at issue consistently document diffuse fibromyalgia tender points, chronic pain, and persistent fatigue." Joint Statement of Material Facts (document no. 13) at 2.

The ALJ discounted Dr. Schmidt's opinion (giving it "little weight") on grounds that it "is conclusory in nature, fails to give disabling limitations and is an assessment of the claimant's ability to engage in basic work-like activities, which is an opinion reserved to the Commissioner." Admin. Rec. at 26. Additionally, the ALJ noted that, "contemporaneous treatment notes clearly showed that the claimant's pain is well controlled with medication" and physical examinations "were benign and do not support Dr. Schmidt's findings." Id. Those findings, however, are not entirely accurate. For example,

11

claimant's treatment notes do not "clearly show" that her pain is well controlled. Indeed, as Dr. Schmidt observed in the Fibromyalgia Medical Source Statement, claimant complained of severe pain often, even when taking prescribed medications. See, e.g., Admin. Rec. at 376-77, 380-81, 390, 392, 400. See also Mental Health Evaluation Report - Adult, prepared by Dr. Trina Jackson, Admin. Rec. at 366 (recounting claimant's reported activities of daily living and noting that she reported having to stop housework frequently due to pain and lack of stamina, suffers from poor sleep due to pain, and reports being able to stand for only 20 minutes at a time). Perhaps of equal importance is Dr. Jackson's conclusion that claimant "appeared to present herself in an honest and straightforward manner. She did not appear to exaggerate or malinger her symptoms." Id. at 365. Parenthetically, the court notes that the ALJ afforded Dr. Jackson's opinions "great weight" because "Dr. Jackson is a medical source who examined the claimant and had an opportunity to observe her, giving Dr. Jackson special knowledge of the claimant and insight into the extent of her impairments and ability to function." Id. at 22.

In light of the foregoing, the court cannot conclude that the ALJ's stated reasons for discounting the medical opinions of

claimant's treating source, Dr. Amber Schmidt, are supported by substantial evidence.  See generally Hunt v. Colvin, No. 16-CV-159-LM, 2016 WL 7048698, at *10 (D.N.H. Dec. 5, 2016) (finding that the ALJ improperly discounted opinions in Fibromyalgia Medical Source Statement because those opinions were supported by relevant medical evidence).  See also Johnson v. Astrue, 597 F.3d 409, 414 (1st Cir. 2009) ("once the ALJ accepted the diagnosis of fibromyalgia, she also had no choice but to conclude that the claimant suffered from the symptoms usually associated with such condition, unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms.  The primary symptom of fibromyalgia, of course, is chronic widespread pain, and the Commissioner points to no instances in which any of claimant's physicians ever discredited her complaints of such pain.  Given this, we do not think that the ALJ's decision to discredit claimant was supported by substantial evidence.") (citations and internal punctuation omitted).

## Conclusion

This case, like so many involving claimants who suffer from Fibromyalgia, is a close and difficult one.  As the Court of Appeals for the Seventh Circuit has observed, Fibromyalgia is:

> a common, but elusive and mysterious, disease, much
> like chronic fatigue syndrome, with which it shares a
> number of features. Its cause or causes are unknown,
> there is no cure, and, of greatest importance to
> disability law, its symptoms are entirely subjective.
> There are no laboratory tests for the presence or
> severity of fibromyalgia. The principal symptoms are
> 'pain all over,' fatigue, disturbed sleep, stiffness,
> and — the only symptom that discriminates between it
> and other diseases of a rheumatic character — multiple
> tender spots, more precisely 18 fixed locations on the
> body (and the rule of thumb is that the patient must
> have at least 11 of them to be diagnosed as having
> fibromyalgia) that when pressed firmly cause the
> patient to flinch . . . There is no serious doubt that
> [claimant] is afflicted with the disease but it is
> difficult to determine the severity of her condition
> because of the unavailability of objective clinical
> tests. Some people may have such a severe case of
> fibromyalgia as to be totally disabled from working,
> but most do not and the question is whether [claimant]
> is one of the minority.

Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 916 (7th Cir. 2003) (quoting Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996)). Here, too, the question is whether claimant is a member of the minority of patients diagnosed with Fibromyalgia who is also disabled by reason of disease.

Having reviewed the medical evidence of record, as well as the arguments advanced by the parties, the court concludes that, on balance, remand is appropriate so the ALJ may, at a minimum, more fully consider the extent to which claimant's Fibromyalgia

is disabling.  The ALJ might also consider whether it is appropriate in this case to seek the advice of a consultative examiner.  See generally Titles II and XVI: Evaluation of Fibromyalgia, SSR 12-p, 2012 WL 3104869 (July 25, 2012) ("We may purchase a consultative examination (CE) at our expense to determine if a person has a [medically determinable impairment] of FM or is disabled when we need this information to adjudicate the case.").  Finally, to the extent the ALJ remains persuaded that the opinions of claimant's treating physician are entitled to little weight, he should more fully explain the bases for that conclusion and identify the record evidence supportive of such a decision.

For the foregoing reasons, as well as those set forth in claimant's memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 8) is granted to the extent she seeks a remand for further proceedings consistent with this opinion.  The Commissioner's motion to affirm her decision (document no. 12) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the ALJ dated June 24, 2015, is vacated and this matter is hereby remanded for further proceedings consistent

with this order.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 22, 2017

cc: Brenda M. Golden Hallisey, Esq.
    T. David Plourde, AUSA